is Cincinnati Insurance, Mr. Blonder. Thank you, Your Honor, and may it please the court. My name is Stephen Blonder and I represent Vita Food Products, Inc. The defendant in this case, Neapolitan, I stand before you asking that you reverse the grant of summary judgment in the district court and remand the case for further proceedings. This case has significant implications for predictability of insurance coverage among commercially contracting parties. The case arises out of Vita Food Products, my client, contracting with Painters USA to paint Vita's facility at a time when Vita was shut down. Unfortunately, an accident happened while Painters was in control of Vita. There was a drain. Ladder fell into the grate in the drain. Mr. Ovando, who worked for Painters USA, fell off and is unfortunately in a coma and all likelihood for the rest of his life. The injury... Had a what for the rest of his life? In a coma for the rest... Well, he's in a coma? Yes, yes. He's in a coma in a vegetative state for the rest of... Most likely of his life. He pursued his worker's comp claims against Painters USA and then filed a state court lawsuit against Vita, alleging a hazardous condition and the personal injuries resulting from conduct of Vita. Vita tendered the case to Painters, which had agreed to provide insurance to Vita as a condition of being allowed to paint the facility. Vita also tendered to its own carrier as well, just out of an abundance of caution. Vita understood at all times that it had insurance coverage from Painters for anything that would happen while Painters was in Vita's facility. The district court, Judge Chang, recognized the testimony on this and saying, Vita, Mr. Morse, who testified, yes, we had this oral agreement. There was also other evidence in the record of this. Mr. Cook, who is the representative of Painters USA, said he didn't really recall, but he had no reason to doubt Mr. Morse's recitation of the statement. There was an oral agreement. We're not talking about a written agreement. It's purely an oral agreement here. For insurance, the evidence is, you could say, disputed on that fact, such that it would preclude summary judgment. Judge Chang, however, went farther than that. He recognized the dispute of fact on that issue and then went and said, based on the policy language, Vita could not be insured. In doing so, Judge Chang walked away from the well established maximum that you interpret a policy or look at the language of a policy in favor of coverage. In fact, Judge Chang did the opposite. He interpreted the policy in such a way to preclude coverage, in this case, rule for Cincinnati. There are two fundamental issues with respect to that insurance policy at issue, which seem to be before the court, and the parties have addressed them. The first is the issue of the certificate of insurance having been issued. The second deals with whether the oral contract was, in fact, performed. With respect to the issue of the certificate of insurance, the certificate on its face states that it conveys no rights. It doesn't affect the legal rights of the parties and says it in multiple places on the certificate of insurance, which is in the record, page 502 of the summary judgment. You haven't explained Cincinnati Insurance's role in all this. Cincinnati Insurance is the insurance company for Painters USA, for the company that came in to do the painting and was in control of the facility. So again, when the underlying lawsuit was tendered to Cincinnati, they denied coverage to Vita, saying that Vita was not an additional insured under the policy. And the issue they point to on the certificate of insurance is notwithstanding the language at the top, which says, this certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policies. And then it goes on above that. That's at the top. Also at the bottom, there's a reference to coverage. So Judge Chang interpreted the certificate of insurance in a way of conveying rights, because there's a factual issue here that he looked at and said, well, that means... Well, look, let me make it a little simpler. So Cincinnati Insurance insured who? Painters USA. Vita was to be an additional insured under Painters policy. Well, wait a second. And the plaintiff or whatever he is? The plaintiff filed a DEC action here. And he sued Painters, is that right? No. I'm sorry, Judge, if I confused... Okay, so make it very simple. Would you please start from the beginning? This case is a declaratory judgment brought by Cincinnati, the insurance company for Painters USA, as to whether Vita is an additional insured under the policy. That's what this lawsuit is. Well, how does that affect the injured person? What it affects the injured person is, it affects... What's his name? Mr. Ovando. Ovando? Ovando, O-V-A-N-D-O. Okay, Ovando, and he is... He was a worker for Painters USA. And he sued... He has sued in state court Vita. And Vita was what, his employer? No. No, Vita was simply the food producer whose facility Painters USA was painting when the accident occurred. Okay, so he sues, and Vita is insured by Cincinnati? No, Painters is insured by Cincinnati, and Vita claims that it is an additional insured painter's policy with Cincinnati. Oh, I see. So, Cincinnati insures Painters, and Vita, who's been sued by Ovando, is claiming also to be insured. Is claiming to be insured by virtue of an oral agreement that it reached with Painters in connection with contracting with Painters to do the work at Vita's facility. Can an oral agreement create an insurance obligation? Under this insurance policy, it can. This insurance policy says it's either a written agreement or an oral agreement where a certificate of insurance has been issued. That's the language of the policy. This policy is different than many other cases and some of the ones cited by Cincinnati, where it was required to be a written contract, which is what the policy required. Are there other jurisdictions in which you have the State Supreme Court interpreting your policy that way? Has it been interpreted before? I'm not representing Cincinnati, I represent Vita. Well, let me ask you that though. Judge, on this point of an oral contract with Schiff Give Insurance, we have found a couple of cases in the country. One is Judge Bucklow in the Shorenstein case, which is a Northern District case. She relies also on a Texas case. Judge Bucklow, in the Shorenstein case, which is cited in our briefs, found that the has been issued language of the certificate of insurance. She agreed with our position in this case. There was also a case from the Washington State, the Federal District Court there. Again, we cite it in our briefs, I believe it's on page 12. But there the issue is court granted summary judgment for an insured, again, our position. Then that was reversed by the Ninth Circuit, which said the insurance company was entitled to discovery in the underlying case, because that was an issue that was raised there. The principle of law that they were basing on doesn't change, but the result changed because of the procedural posture of that case. Well, is there a reference to an oral agreement in Cincinnati Insurance's policy? Yes, there is, Judge. And it is in the record. It's attached to our appendix, but it's on page 347 of document 40-1. And it says, who is an insured, automatic additional insureds? And it says, any person or organization described in paragraph 9.82 below whom you were required to add as an additional insured under this coverage part by reason of, A, a written contract or agreement, or B, an oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued. So that's where the policy language, and here, this policy language may be different than many other policies which specifically require a written agreement. And again, the purpose of the certificate of insurance doesn't afford any rights. It doesn't convey rights. It's simply evidence of the oral agreement, which would be the purpose of the certificate of insurance there, of not conveying rights. Here, what... Is that what it means when it says VITA food products is shown as an additional insured? Yes. So you're saying this certificate, which says it's a matter of information, confers no rights. It's just a way of recording... It's a way of reflecting that the parties have an oral agreement. It doesn't change the status quo. It doesn't change the circumstances under which someone is or is not an insured. Okay, thanks. I reserve the rest for... That's fine. Thank you, Mr. Blonder. Mr. Reed. Good morning. May it please the Court. My name is Brian Reed. I am counsel for the plaintiff of Pele, Cincinnati Insurance Company, and we respectfully request that the Court affirm the District Court's ruling of summary judgment for Cincinnati. And to really get right to the point, and this I hope will help the Court understand, Cincinnati's policy is issued solely to Painters USA. VITA food is not listed on that policy in any fashion. The means by which VITA food becomes an insured on Cincinnati's policy is if VITA food and Cincinnati's named insured painters agree. In this case, they allege that there's an oral agreement that VITA be able to access insurance coverage under Cincinnati's policy. That's a disputed issue and in fact the certificate, though, isn't it? It is. However, the certificate, and it's an important part, the timing of the certificate and of this purported oral agreement is after the accident occurred, which is contrary to, and in Cincinnati's position, contrary to what the requirements of the policy are. That there be an oral agreement, again, which is a disputed issue of fact, and the Court found that maybe it was, maybe there wasn't, probably an issue for the court of jury. The issue that the court ruled upon, however, was that VITA food could not demonstrate that this agreement, if it occurred, actually occurred prior to the accident which Mr. Ravondo was injured. If you'll note on the certificate of insurance, it's actually issued the day after the accident, and in fact it's reflected in the record that it wasn't even requested until after the accident. So what we have here, drawn from the facts, is that these parties may have had an agreement, certainly they had an agreement that there was supposed to be some painting done. Did that agreement also include a requirement that... Well in the provision in the insurance contract that allows an insured to be added by an oral agreement, does it specify when the oral agreement must be made? It says, and I'll refer right to the language, an oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued. It's not is issued, it's not may be issued, it has to be has been issued, and that at that time... Has been issued as of when? In other words, and that's when there's an oral agreement that there be insurance coverage and a certificate has been issued, then that party becomes an additional insured under the policy. And respectfully, Your Honor, we are... I don't understand. It has been Where does it say it has to be issued before there's an accident? Well, in order for a stranger to the policy to become an insured under the policy, they have to meet the requirements until there is an oral agreement and a certificate has been issued. Bite of food is not an insured under that policy, and that's the timing element, as required by the plain language of the In the additional insured agreement, which says an oral agreement where a certificate of insurance has been issued. Where are you looking at? Is it something we have in our papers? It is. It's in the appendix, which is attached to Bite of Food's brief at page 2223, and I believe the council also cited to it in the record, but it's in an endorsement to the Cincinnati policy. In a separate appendix, not in the briefs. Is that what you're saying? It was a short appendix attached, I believe, to plaintiff's opening brief. This could have been done prior to the accident, regardless of when the accident occurred. Suppose the accident occurred, then it was an oral agreement and there could have been a certificate of insurance issue, right? Could have been. Whether there would have been or not is another question. Correct, and the issue that Cincinnati has raised, and we believe it's supported by the policy languages, but it's the date of the certificate of insurance that counts. Correct. Now, where is it? Okay, I have your appendix now. Where is this that you were reading from? It's under section 9, which of that endorsement on page 22, automatic additional insured specified relationships. Wait a second, let me find it. You mean at the bottom where it says automatic additional insured? Exactly, Your Honor, and then it trails over into the next page and it says, the following is hereby added to the who is an insured, meaning this provision helps define or adds people who will be insured under the policy. And it continues, any person described below whom you were required to add as an either a written contract, and if there's a written contract, we're done here. There's no subsequent requirement of a certificate of insurance because we can look at the written contract and see its date and the terms and determine, yes, was that agreement in effect prior to the prior to loss, or was it not? So a written contract or agreement is one way, or subpart B, an oral agreement or contract where a certificate of insurance showing that personal organization has been issued, and it has been issued. Now the certificate of it, is this a reference to this thing? Certificate of liability insurance? And you say that was issued after the accident, and actually it was requested after the accident. Okay, thanks. I understand, Your Honor. And the reason why that's important is in the context of an oral agreement, Cincinnati obviously is not a party to that oral agreement. The two parties to that agreement, to the extent that it exists, are Bite of Food and Painters USA, and clearly they have interests in the... The certificate has to be issued prior to the oral agreement. Or as a result of the oral agreement, but certainly before the loss that they seek to insure. Where does that language come from? Well, because they're not an insured. That provision provides the means by which Bite of Foods can become an insured. There has to be an oral certificate. Once both those prongs are met, then they're an insured. They became an insured as of July 1st, would be our position, but the accident had already happened. Whereas the plaintiff says that the policy only requires that a certificate of insurance be issued before coverage will ensue. I don't see where that's... Is that different from what you are saying? I believe it is different, Your Honor. I'm sorry. I don't believe it's found in the policy language, which again should be interpreted according to its plain ordinary reading. In other words, if it isn't... If the court is not inclined to give facts to the past tense has been issued, then if there's... If it read instead where certificate of insurance is issued, well then they could request one today. And clearly that wasn't... That's not the intent. That doesn't protect Cincinnati's interest. It doesn't look at the facts and determine what was the agreement, when was it formed, and how does that relate to the loss that they see covered. And if I might, the cases that Bite of Food cites to almost universally relate to written agreements, which is... There had been a certificate of insurance, though. In this case? Yeah. Yes, issued after the loss happened. Well, no, no, but there was a certificate. Not in this instance, Your Honor. There's only one certificate. No certificate at all? Correct. There's a policy of insurance. Well, then what's... I don't understand. What's the significance of this, of a certificate of insurance? In this case, it allows Cincinnati, the party from whom coverage is being sought, to know that perhaps these parties had an oral agreement, and that perhaps it isn't something being devised. The certificate of insurance is only for oral agreements? Correct. In this instance. If they have a written agreement... Well, what do you mean in this instance? Was there any certificate of insurance of any sort before the accident? No, that's the only certificate of insurance issued July 1st, after the June 30 accident had already occurred. What's the purpose of a certificate of insurance? It allows Cincinnati, who in fact doesn't issue this certificate, but allows Cincinnati to see, oh, okay, perhaps these parties did have an agreement whereby Cincinnati's named insured agreed to obtain insurance coverage for Vitafood, the party seeking coverage here. Otherwise, we're left to the whims, so to speak, of the two parties. But you're saying that at no time when this insurance was in force, Vitafood was forgetting about painters. But you're saying, when was this policy, the original policy, when did that become effective? The policy was effective for the painting company, Painters USA, for some time. There's no question about the effective dates of the policy. However, Vitafood... Right, I understand. So, but you're saying that during this period, until the addition of Vitafood products, when it was just painters being insured, there was no certificate of liability insurance. Correct. Because the certificate is issued in favor of Vita, to say, Vitafood, this is a policy that the party with whom you've contracted, Painters USA, this is a policy... So, you're saying a certificate of liability is issued only after someone is added as an insured? That's one of its functions. And in this case, it shows... What other functions does it have? It provides information regarding the type of coverage. But then why wasn't any certificate ever filed before Vita was in the picture? Because the only person insured prior to that time was Painters USA, who has the policy. It's not a Vitafood policy. So, the certificate is only for someone new? Correct. The certificate acknowledges the existence of the insurance policy? Is that it? It does. It sets forth the policy number... To whom are they giving this notice? Vitafoods, for example, who doesn't have a copy of the policy or may not have a copy of the policy. They can refer to the certificate of insurance to get the policy number, the requested it in the agent issue, in fact. Who files it? It isn't actually filed. Who fills it out? The agent. In this case, Vitafood, someone at Vitafood placed a call to someone at Painters to say, we need a certificate of insurance. The agent is the agent for the insurance company, if I recall correctly? That's correct. So, in effect, they're filling out their own form, notifying themselves? No, it's provided to Vitafood as their certificate holder. It's an interesting concept. The question here is, can Vitafood become an insured on Cincinnati's policy? The provision by which it can do so is set forth in that endorsement. There has to be either a written agreement saying that they were required to provide that agreement, or a certificate has been issued. In this case, we're dealing only with the oral agreement. They say there was. The trial court found that there was an issue of fact there. So, if the agent having the knowledge of this whole fact does not file a certificate of insurance until after the accident, that lets the company he's the agent for off the hook? That has to be requested. Right. But if this certificate had been filed a day before the accident, you'd be... We'd be saying that they're potentially insured for coverage. That's correct. Right. You'd be liable. Well, provided they prove that there's an oral agreement, which is an issue. Yes, I know, but they had an oral agreement. So, if this had been filed a day earlier, two days earlier, then you'd have to... You'd be liable. Because there would be proof. So, what proof? Proof of what? Proof that there was an agreement before the loss happened. Why does it have to be an agreement before the loss happened? Because now they're seeking insurance coverage from Cincinnati, where there may not have been an agreement regarding insurance coverage. One party says maybe there was. Well, you think they're lying? Well, that's an evidentiary issue. It is. And that's a court problem. Well, suppose they may, if they'd made this oral agreement the day before, what would you, then you don't, then you'd only be able to argue that they were lying, right? Well, if they were telling the truth, you'd be liable, right? If they were telling the truth? Okay, suppose they're telling the truth. Yeah, that's an evidentiary issue. You can prove that. Have them tied up to a lie detector or something. So, what difference does it make? Assuming that they really have this oral agreement, what difference does it make? I don't mean the financial difference. What legal difference, contractual difference, should it make that it was a day late? Well, because contractually, that's the risk that Cincinnati agreed to assume. I'm asking you what difference it makes. Why would you care? Because Cincinnati is a stranger to these oral agreements, underlying agreements. In order for Cincinnati to, it leaves it wide open. Cincinnati has no ability to know when these agreements are happening or not happening. That's why they require, particularly in the instance of an oral agreement, there's an oral agreement, okay, we'll take testimony on that, but let's back that oral agreement up with a document. No, no, my question is, why would it make a difference? If the oral agreement had been made a day earlier, then you're stuck. Why does it make a difference that it's a day later? So, why is that material to anything? So that that could be documented, Your Honor. Pardon? So that the oral agreement can properly be documented. Can properly be what? Documented. Documented? Right, and so that we're not dealing with something. Well, it can be properly documented whenever it occurs, right? This is proper documentation. As you say, if you think they're lying. It is proper documentation, and what we're asking is that the court give effect to the plain language of the policy. But why? I'm asking for a reason. So that they can't, well, it was issued a day after, what if it was issued today? Then we would have the same argument. We say, no, no, no, you can't get a certificate of insurance four years after the accident and satisfy the prong of the additional insured endorsement. Okay, so you have no reason, you just have a technicality. No, we require that they be insured under the policy before the loss. Why? In order, so that we're not paying out under a policy for people that aren't insured. Could you reject an additional insured? Could Cincinnati? Yeah. No, we're not parties to the underlying agreement. So if our insured, again, we're bound by the terms of the endorsement. The underlying, if the insured agrees in a written contract or an oral agreement with a certificate that they're going to provide additional insured coverage, then that party is able to seek coverage as an insured. Now, of course, it's subject to the policy terms, but at the very least, then, it becomes potentially an insured under the policy. Seems extraordinarily irresponsible of the insurance company to allow someone to change the insured orally. Why on earth doesn't the company say, yeah, you can add, you can add, you want to add someone's insured, that's fine, but of course, you have to get our agreement to do it. And that's really the function of the requirement of the certificate of insurance. Well, where is there a requirement that it approved the oral agreement? There isn't. It's up to the insured and the... So they could be, they could be adding as an additional insured, I don't know, President Putin of Russia. You'd say, fine, anyone you want. If there's an oral agreement between President Putin and the other party, there needs to be a contract. What a way to run an insurance business. But that's why, that's why in the instance of an oral agreement, that's why in the instance of an oral agreement, there's the additional requirement. Okay, well, thank you, thank you, Mr. Reed. Mr. Flandre, do you have anything further? In response, I believe it was Justice Kaney's question, Mr. Reed said, well, it's possible they came up with this oral agreement after the accident happened. The record is devoid of any suggestion that there was any oral agreement reached after the accident happened. Again, testimony of Mr. Morse, which is included in the summary judgment motion, lays clear that the discussion about the insurance happened at the time he contracted for the work. It was months ahead of when the accident happened, number one. Number two, with respect to certificate of insurance, I think there was a misconception based on Mr. Reed's comments. VITA does nothing. VITA doesn't ask for it. VITA doesn't obtain it. The basis is for painters, which is the insured under its own policy, to provide coverage to VITA. So it's not that VITA comes out and says, hey, send us an insurance, certificate of insurance, create one. Painters agrees to provide insurance. Its policy lets it do that. And here, VITA is left, unfortunately, at this point, holding the bag. So we ask that you reverse and send us back so we can proceed. Thank you. Thank you very much, Mr. Blonder and Mr. Reed. And this will be taken under advisement. Court will be in recess.